## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GUJARAT FLUOROCHEMICALS LIMITED )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>*Defendant*. )<br>) | Court No. 22-00120 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Gujarat Fluorochemicals Limited ("GFCL"), by and through its undersigned attorneys, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1.      This is an appeal from the final determination of the countervailing duty investigation of *Granular Polytetrafluoroethylene Resin from India*. The period of investigation ("POI") is April 1, 2019 through March 31, 2020.

2.      On January 25, 2022, the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") published its final determination finding that countervailable subsidies are being provided to producers and exporters of granular polytetrafluoroethylene ("PTFE") resin from India. *See Granular Polytetrafluoroethylene Resin From India*, 87 Fed. Reg. 3765 (Dep't Commerce Jan. 25, 2022) (final affirm. CVD & critical circum. determ.) ("*Final Determination*"). Commerce's factual and legal conclusions underlying the *Final Determination* are set forth in its Issues and Decision Memorandum. Memorandum from J. Maeder to L. Wang, re: Issues and Decision Memorandum for the Final Affirmative

AFDOCS/25630986.3

Determination of the Countervailing Duty Investigation of Granular Polytetrafluoroethylene

Resin from India ("*IDM*").

3.      On March 8, 2022, the International Trade Commission ("ITC") issued its

determination that imports of granular PTFE resin materially injured the U.S. industry. *See*

*Granular Polytetrafluoroethylene (PTFE) Resin from India and Russia; Determinations*, 87 Fed.

Reg. 14038 (Int'l Trade Comm'n Mar. 11, 2022) ("*Final Injury Determination*").  In the *Final*

*Injury Determination*, the ITC determined that imports of granular PTFE resin from India and

Russia materially injured the domestic industry.  *Id.*  Further, the ITC determined that "imports

subject to Commerce's affirmative critical circumstances determination are not likely to

undermine seriously the remedial effect of the countervailing and antidumping duty orders on

granular PTFE resin from India."  *Id.*

4.      On March 15, 2022, Commerce published the antidumping duty and

countervailing duty orders. *See Granular Polytetrafluoroethylene Resin from India and the*

*Russian Federation: Antidumping Duty Order*, 87 Fed. Reg. 14514 (Dep't of Commerce Mar. 15,

2022); *Granular Polytetrafluoroethylene Resin from India and the Russian Federation:*

*Countervailing Duty Orders*, 87 Fed. Reg. 14509 (Dep't of Commerce Mar. 15, 2022) ("*Order*").

With respect to entries of merchandise subject to the countervailing duty order, Commerce

explained that "{w}ith the exception of entries occurring after the expiration of the provisional

measures period and before the publication of the ITC's final affirmative injury determinations . .

. countervailing duties will be assessed on unliquidated entries of granular PTFE resin from India

and Russa entered, or withdrawn from warehouse, for consumption on or after July 6, 2021, the

date of publication of the *Preliminary Determinations* in the *Federal Register*."  *Order*, 87 Fed.

Reg. at 14510.

## JURISDICTION

5.      Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(II) and

516A(a)(2)(B)(i) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C.

§§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i). Plaintiff contests Commerce's *Final

Determination*, specifically as applied to Plaintiff.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

7.      Plaintiff GFCL is an interested party to the proceeding under Sections 516A(f)(3)

and 771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively.

Plaintiff is a foreign manufacturer and exporter of the subject merchandise, and participated

actively at all stages of the investigation by submitting questionnaire responses and

administrative briefs.

8.      Plaintiff, therefore, has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

9.      This Complaint is being filed concurrently with the filing of a summons on April

12, 2022, which is within thirty (30) days of Commerce's publication of its Countervailing Duty

Order on granular PTFE resin from India.  *See Order*, 87 Fed. Reg. at 14509.  In accordance with

USCIT R. 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C.

§ 2636(c), Plaintiff's Complaint is timely.

## STANDARD OF REVIEW

10.     This Court must remand any administrative determination by Commerce which is

"unsupported by substantial evidence on the record" as a whole, or is "otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

AFDOCS/25630986.3

11.     When reviewing whether Commerce's actions are unsupported by substantial

evidence, the Court assesses whether the agency action is "unreasonable" given the record as a

whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial

evidence represents "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed.

Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

12.     The substantial evidence standard requires the Court to "take into account

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340

U.S. 474, 488 (1951).  This Court has recognized that this standard reflects "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Suramerica*

*de Aleaciones Laminades, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

13.     When reviewing Commerce's statutory interpretations, the Court applies the two-

part framework set forth in the Supreme Court's opinion in *Chevron*. *Union Steel v. United*

*States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def.*

*Council, Inc.,* 467 U.S. 837, 842–43 (1984)). Under *Chevron*, to determine whether an agency's

interpretation of the statute is entitled to deference, the Court conducts a two-part test. Under the

first prong of this test, where Congress has spoken directly to the question at issue, the Court and

the agency must give effect to the unambiguously expressed intent of Congress. *See* 467 U.S. at

842–43. If, however, the statute is vague or silent on an issue, the Court upholds the agency's

interpretation provided that the interpretation is reasonable. *See id*. at 843.

14.     This Court has found Commerce's determinations unlawful "where Commerce

has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to

provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 927 F. Supp. 451, 454 (Ct. Int'l Trade 1996); *see also Asociacion Colombiana de Exportadores de Flores, v. United States*, 6 F. Supp. 2d 865, 880 (Ct. Int'l Trade 1998).

## STATEMENT OF FACTS

15.     On January 27, 2021, Daikin America, Inc., the petitioner ("Petitioner"), submitted a countervailing duty petition concerning imports of granular PTFE resin from India. Commerce initiated a countervailing duty investigation on February 23, 2021. *See Granular Polytetrafluoroethylene Resin from India and the Russian Federation: Initiation of Countervailing Duty Investigations*, 86 Fed. Reg. 10931 (Dep't Commerce Feb. 23, 2021).

16.     On March 9, 2021, Commerce selected Plaintiff as the sole mandatory respondent for individual examination in the investigation.  *See Granular Polytetrafluoroethylene Resin from India,* 86 Fed. Reg. 35479 (Dep't Commerce Jul. 6, 2021) ("*Preliminary Determination*"). Commerce's factual and legal conclusions underlying its *Preliminary Determination* are set forth in the *Preliminary Determination Decision Memorandum. See* Memorandum from J. Maeder, Deputy Assistant Secretary to C. Marsh, Acting Assistant Secretary, Re: Decision Memorandum for the Preliminary Determination of the Countervailing Duty Investigation of *Granular Polytetrafluoroethylene Resin from India* (Jun. 28, 2021) ("*PDM"*).  Commerce issued its questionnaire to GFCL on March 9, 2021.

17.     Plaintiff participated in the proceeding through the filing of questionnaire responses and supplemental questionnaire responses, filing a response to Commerce's "Questionnaire In Lieu of Verification," participation in Commerce's administrative hearing, and through the submission of legal arguments.

18.     On March 26, 2021, Plaintiff filed its response to Commerce's Section III Questionnaires, Identifying Affiliated Companies.  In this initial questionnaire response, GFCL

5

explained that one of its affiliates, Inox Wind Limited ("IWL"), provided GFCL power at market rates and in insignificant quantities.  *See* Gujarat Fluorochemicals Limited's Questionnaire Response to Section III (Identifying Affiliated Companies) at 7-8 and Exh. 4(b) (March 26, 2021).

19.     GFCL filed a supplemental response to Commerce's questionnaire, at Commerce's request, on April 15, 2021.  There, GFCL further explained the nature of certain affiliates and the production activities (if any) of certain affiliates, and included Commerce's determinations regarding the same companies in a prior investigation initiated in 2017 on PTFE resin from India.  *See* Gujarat Fluourochemicals Limited's Supplemental Questionnaire Response to Section III Identifying Affiliated Companies (Questions 3-7) (April 15, 2021) ("April 15, 2021 Questionnaire Response").  In addition to its responses to Commerce's questions, GFCL attached excerpts of relevant submissions filed by GFCL in the 2017 investigation, demonstrating IWL's production activities, and Commerce's letter in response, which explained that Commerce determined a full questionnaire from IWL was not required.  *See id.* at Exhibit S-3.

20.     On May 6, 2021, GFCL submitted its response to Section III of Commerce's countervailing duty questionnaire.  In its May 6, 2021 response, GFCL explained that land provided to GFCL by the Gujarat Development Industrial Corporation ("GIDC") was an area specifically designated for industrial purposes. *See* Gujarat Fluorochemicals Limited's Section III Questionnaire Response (May 6, 2021) ("Initial Response"). GFCL also provided details of land purchased through private transactions in Mahidad and Ranjitnagar, from independent sellers, as potential benchmarks and also identified the treatment of agricultural land and industrial land, respectively.  *See id.*  GFCL explained that Mahidad and Ranjitnagar are located in Gujarat, like the leased plot provided by the GIDC, and provided sales documentation for each plot of land.

AFDOCS/25630986.3

*Id.* at 78-81, Exhibit 16(f).  GFCL also submitted and summarized details of additional land purchased outside of the GIDC from private parties, for which GFCL paid a higher rate than the GIDC land.  *Id.* at 81, Exhibit 16(l) and Exhibit 16(m).

21.     On May 24, 2021, and May 26, 2021, at Commerce's request, GFCL submitted a questionnaire response on behalf of IWL.  *See* Inox Wind Limited's Section III Questionnaire Response (Part I) (May 24, 2021) ("IWL May 24, 2021 Response"); Inox Wind Limited's Section III Questionnaire Response (Part II) (May 26, 2021) ("IWL May 25, 2021 Response"). In its May 24, 2021 Response, GFCL explained that "although GFCL paid IWL to generate a certain amount of wind power, IWL did not directly transmit the amount of purchased power to GFCL.  The power generated by IWL is transmitted to a substation and then transmitted through the power grid."  IWL May 24, 2021 Response at 5.  Once the power is transmitted to the grid, it is indistinguishable from all other power consumed by GFCL from the grid.  *Id.*  GFCL identified where in its previous questionnaire responses Commerce could find the small amount of power generated and a list of affiliated companies.  *Id.*

22.     In its response submitted on May 26, 2021, GFCL explained, on behalf of IWL, that one of IWL's leased manufacturing units is situated at an Industrial Area in the state of Madhya Pradesh.  *See* IWL May 25, 2021 Response at 19-21.  IWL provided details regarding the leased land, including the lease rate. *Id.*

23.     On June 4, 2021, GFCL submitted benchmark information to measure the adequacy of remuneration of government provisions of land.  *See* Gujarat Fluorochemicals Limited's Benchmark Submission (June 4, 2021).  In this submission, GFCL provided the "market value rates for land in the Ambheta village in Vagra, Bharuch District in Gujarat determined by the Stamp Duty Valuation Organization that were applicable in June 2006." *Id.*

7

This submission also contained factual information supporting that state governments determine the valuation of land. *Id.*

24.     On June 11, 2021, GFCL submitted its second supplemental questionnaire response, which provided additional supporting information for the private land purchases at Ranjitnagar and Mahidad, in response to Commerce's investigation of the GIDC's provision of land. *See* Gujarat Fluorochemicals Limited's Second Supplemental Questionnaire Response (June 11, 2021) at 2-4, Exhs. S2-4 through S2-5 ("June 11, 2021 Response"). GFCL explained the details pertaining to these two private land purchases, provided as potential benchmarks for Commerce's valuation of the provision of land by the GIDC, including land deeds, breakdown of total cost, and sales agreements. *Id.*

25.     GFCL submitted additional responses to Commerce's supplemental questionnaires on June 21, 2021, August 13, 2021, and September 2, 2021. *See* Inox Wind Limited's Second Supplemental Questionnaire Response at 3 (June 21, 2021); Inox Wind Limited's Third Supplemental Questionnaire Response at 3 (June 21, 2021); Gujarat Fluorochemicals Limited's Fourth Supplemental Questionnaire Response (Aug. 13, 2021); Inox Wind Limited's Fourth Supplemental Questionnaire Response (Sept. 2, 2021).

26.     On July 6, 2021, Commerce issued its preliminary determination in which it assigned GFCL a countervailing duty rate of 4.75 percent. *Preliminary Determination,* 86 Fed. Reg. 35479.  Directly contradicting its findings in the 2017 investigation of GFCL, where Commerce did not even require questionnaire responses from IWL, Commerce determined that the small amount of electricity sold by IWL to GFCL, and provided through the electricity grid (that is, not directly from IWL), was primarily dedicated to the production of granular PTFE resin and that subsidies granted to IWL should be attributed to GFCL. *See generally*

*Polytetrafluoroethylene Resin from India,* 83 Fed. Reg. 9842 (Dep't of Commerce Mar. 8, 2018)

(prelim. affirm. CVD determ.) and accompanying Issues and Decision Memorandum ("*2017*

*Prelim. PTFE Resin from India*"), unchanged in *Polytetrafluoroethylene Resin from India,* 83

Fed. Reg. 23422 (Dep't of Commerce May 21, 2018) (final affirm. CVD determ.) and

accompanying Issues and Decision Memorandum ("*2017 Final PTFE Resin from India*"); *see*

*also PDM* at 8.  Thus, Commerce also indicated that it intended to issue a post-preliminary

analysis which examined programs used by IWL.  *See id.* at 2.

27.     In its *Preliminary Determination*, Commerce examined the GIDC provision of

land to GFCL.  Commerce's *Preliminary Determination* with respect to the intended benefit

calculation is confusing and unclear.  Commerce had multiple "tier-one" benchmarks on the

record to select, including private transactions for two land purchases in Ranjitnagar and Mahidad

provided by GFCL.  *See* Initial Questionnaire Response at Exhibit 16(h) – Exhibit 16(l); *see also*

June 11, 2021 Response at 2-4, Exhs. S2-4 through S2-5.  During the 2017 investigation of PTFE

resin from India, where Commerce was investigating the same GIDC provision of land to GFCL,

Commerce chose to rely on these two land purchases from private entities in Ranjitnagar and

Mahidad to determine whether the GIDC provision of land conferred a benefit to GFCL.  *See*

*2017 Prelim. PTFE Resin from India,* at 22 (using the private land purchases submitted by

GFCL). *2017 Final PTFE Resin from India* at 27-28 ("Commerce has used agricultural land

offered to the respondent as a tier-one benchmark.").  Consistent with the record of the 2017

PTFE investigation, GFCL demonstrated that although this land was initially categorized as

agricultural land, this land was purchased and used by GFCL for industrial purposes.  *2017 PTFE*

*Resin from India* at 27-28 ("In this case, record evidence demonstrates that GFL intended to

develop this land for industrial use rather than continue to use it for agricultural purposes."); *see*

Initial Questionnaire Response at Exhibit 16(h) – Exhibit 16(l); *see also* June 11, 2021 Response at 2-4, Exhs. S2-4 through S2-5.

28.      Petitioners also put on the record a bid price for land in Ahmedabad, Gujarat. Petitioner's Benchmark Data Submission (Jun. 1, 2021) at Exh. 6 ("Petitioner's June Benchmark Submission").  The administrative record provides very little context for the bid price for land in Ahmedabad, Gujarat provided by the Petitioner but, what it does show is that the highest bidder bid "a staggering price," and that the transaction was not yet completed at the time of the article. *Id.* ("The {high court} also decided to retain the Earnest Money Deposit (EMD) of Bahubali, in case the top bidder backs out." ).  The only other information put on the record describes the location of the closed mill as "behind Madhupura market in the northern part of the Walled City." *Id.*  Evidence on the record describes the "Walled City" as "the original settlement around which the city has grown," where the "original village settlements . . . have been engulfed by urban expansion."  *Id.*  Importantly, evidence on the record demonstrates that the "Walled City" is not classified as industrial land. *Id.*

29.      To determine a benefit, Commerce rejected the useable private land transactions put on the record by GFCL, stating that its "preference {is} to use a transaction-specific, or tier one, benchmark derived from the country under investigation," and that it was relying on a "private land transaction in Ahmedabad, Gujarat" ("Ahmedabad Benchmark"). *PDM* at 10.  The determination to ignore GFCL's proposed benchmarks and rely on the Ahmedabad Benchmark was contrary to Commerce's determination in the 2017 investigation of GFCL's sales of PTFE resin to the United States. *See 2017 Prelim. PTFE Resin from India* at 22 (using the private land purchases submitted by GFCL); *2017 Final PTFE Resin from India* at 27-28 (continuing to using the private land purchases submitted by GFCL, determining that the prices submitted by GFCL

AFDOCS/25630986.3

represented tier-one benchmarks and the agricultural land was intended for industrial development).

30.     However, in its calculation memorandum, Commerce relied on a much lower benchmark derived from the private land transaction put on the record by GFCL. *See* Memorandum to The File from Janaé Martin, Re: Preliminary Determination Calculations for Gujarat Fluorochemicals Limited (June 28, 2021) ("*Preliminary Calculation Memorandum*") at 4 and Attachment 2.  It was unclear from the *Preliminary Determination* which benchmark Commerce intended to use.  Commerce also affirmatively determined that the "GIDC's Provision of Land for LTAR . . . did not confer a measurable benefit during the POI." *PDM* at 26.  Thus, Commerce stated it did "not reach a preliminary determination as to whether there is a financial contribution or specificity for this program." *Id*.

31.     On August 11, 2021, at Commerce's request, GFCL submitted additional factual information to measure the adequacy of remuneration of land purchases.  Included in this submission was the "Guiding Principles for Market Value of Agricultural Land 2014-2015," which demonstrates that it is possible for agricultural land in the Barwani district, where land was provided to IWL, to be converted to industrial land. *See* Gujarat Fluourochemicals Limited's Benchmark Data Submission (August 11, 2021).

32.     Petitioner also submitted additional factual information on August 11, 2021, to measure the adequacy of remuneration of land purchases. *See* Petitioner's Land Benchmark Submission (Aug. 11, 2021) ("Petitioner's August Benchmark Submission").  In its submission, Petitioner provided an article describing a bid for land in Mumbai, Maharashtra. *See id.* at Exh. 3.  The proposed Mumbai benchmark is also described as "prime land belonging to {National Textiles Corporation} at Worli in Mumbai," which is "located in the heart of the metropolis."

Petitioner's August Benchmark Submission at Exh. 3.  There is no indication that the bid was

finalized, only that "{f}inancial and realty major, Indiabulls Infratech has emerged as the auction

winner of 2.39 acres of prime land." *Id.*

33.     In its submission to Commerce on August 13, 2021, GFCL explained that it does

not make any sales to IWL, that IWL must first transport any power generated to the grid, and

that, after February 2020, GFCL did not purchase any power from IWL.  *See* Gujarat

Fluourochemicals Limited's Fourth Supplemental Questionnaire Response (August 13, 2021).

34.     Commerce issued its post-preliminary analysis on October 1, 2021, in which it

further investigated IWL.  *See* Memorandum from S. Fullerton, Associate Deputy Secretary to C.

Marsh, Acting Assistant Secretary, Re: Post-Preliminary Analysis of Countervailing Duty

Investigation, *Granular Polytetrafluoroethylene Resin from India* (Oct. 1, 2021) ("*Post-*

*Preliminary Determination*").  In its <u>post-preliminary analysis</u>, Commerce examined certain

programs alleged to be used by IWL and whether subsidies were attributed to GFCL, including

the State Industrial Development Corporation's ("SIDC") provision of land to IWL.  Here, again,

Commerce relied on a benchmark derived from the private land transaction put on the record by

GFCL in its calculations, referring only to the "Gujarat transaction, which was used in the

*Preliminary Determination*." *Id.* at 4; *see also* Memorandum to the File from Janaé Martin, Re:

*Countervailing Duty Investigation on Granular Polytetrafluoroethylene Resin (Granular PTFE*

*Resin) from India*, Post-Preliminary Analysis Calculations for Gujarat Fluorochemicals Limited

(Oct. 1, 2021) ("*Post-Preliminary Calculation Memo*") at Attachment 2.  Commerce averaged

this "Gujarat transaction" with a "transaction involv{ing} 'prime' land, formerly used by an old

textile mill which had been shut down, purchased in a competitive auction in Mumbai,

Maharashtra" ("Mumbai Benchmark").  *Post-Preliminary Determination* at 3.  By relying on the

AFDOCS/25630986.3

Mumbai Benchmark for high-priced land in the metropolis, rather than the Ranijtnagar and Mahidad private transactions put on the record by GFCL, Commerce inflated the subsidy rate assigned to GFCL by double-digit percentage points.  Commerce calculated a net countervailable subsidy of 22.53 percent.  *Id.* at 13.

35.     Commerce's *Post-Preliminary Determination* suffers of the same flaws as Commerce's *Preliminary Determination*, where Commerce summarily referenced one potential benchmark in the determination memo but relied on another in its calculation memo. Thus, again, if Commerce's reference to the "Gujarat transaction" in the *Post-Preliminary Determination* was actually a reference to the Ahmedabad price, its *Post-Preliminary Determination* contradicts its *Post-Preliminary Calculation Memo*.  The *Post-Preliminary Calculation Memo* calculates a benchmark averaging the Mumbai Benchmark with the private land transactions put on the record by GFCL in its May 6, 2021 response to Commerce's questionnaire.  *See Post-Preliminary Calculation Memo*; *see also* Initial Questionnaire Response.

36.     On October 29, 2021, GFCL submitted its response to Commerce's Questionnaire In-Lieu of On-Site Verification, in which GFCL provided documentation supporting its previously filed questionnaire responses, at Commerce's request.  With respect to land, GFCL provided requested screenshots of its SAP ledger demonstrating payments, taxes, and fees; supporting documentation detailing these payments; and related letters and agreements, as reported in GFCL's May 6, 2021 questionnaire response.  *See* Gujarat Fluourochemicals Limited's Response to Questionnaire In-Lieu of On-Site Verification (Oct. 29, 2021).

37.     On November 11, 2021, GFCL filed a case brief arguing that investigation of IWL was not warranted because the small amount of electricity purchased by GFCL was not primarily dedicated to the production of subject merchandise; Commerce cannot rely on its

selected benchmark to determine whether IWL's lease of land from the SIDC was for adequate remuneration; and that certain Renewable Energy Certificates were not a financial contribution conferred by an authority to GFCL.  *See* Gujarat Fluorochemicals Limited's Case Brief (Nov. 18, 2021) ("GFCL Case Br.").  With respect to the selected benchmark, GFCL argued at length that Commerce should rely on GFCL's private transactions, that the Mumbai Benchmark could not be considered a comparable benchmark because, among other reasons, Commerce's selection of the Mumbai Benchmark (which according to the news article was the highest bid to purchase property) was contrary to prior determinations, and the land purchased in Mumbai is not comparable to the land IWL leases from the SIDC.  *See* GFCL Case Br. at 22.

38.    GFCL filed a rebuttal brief on December 1, 2021, arguing that Commerce also cannot rely on the Ahmedabad bid price and should continue to rely on the Gujarat transactions submitted by GFCL, as Commerce did in its calculation memoranda.  *See* Gujarat Fluorochemicals Limited's Rebuttal Brief (Dec. 1, 2021) ("GFCL Rebuttal Br.").  Among other comparability issues with the Ahmedabad bid price, GFCL argued that the bid price did not represent an actual transaction, as preferred by Commerce, and was not for industry-ready land, but is land in an urban area containing a mill that was unused for twenty-seven years.  *See* GFCL Rebuttal Br. at 5-6.

39.    On January 25, 2022, the Department published its *Final Determination*, assigning GFCL a rate of 31.89 percent.  *See Final Determination*, 87 Fed. Reg. 3765, 3766; *see also IDM*.  In the *Final Determination*, Commerce used the Ahmedabad Benchmark to calculate whether GFCL's land purchases from the GIDC were for adequate remuneration, stating only that "we are using the Ahmedabad, Gujarat, land benchmark" and "we are not using GFCL's transactions in Ranjitnagar and Mahidad."  *IDM* at 21-22.  Commerce did not address *any* of

GFCL's many arguments regarding the comparability of the Ahmedabad Benchmark. *See id.* at 13-22. Additionally, Commerce never determined whether the provision of land by the GIDC provided a financial contribution from an authority which resulted in a benefit that was specific. *Id.* Commerce also continued to use the Mumbai Benchmark, averaged with the Ahmedabad Benchmark, to calculate whether IWL's land purchases from the SIDC were for adequate remuneration, stating that it found "no substantive support for excluding the Mumbai transaction from the benchmark, as it otherwise provides one of the two best available benchmarks on the record of this investigation." *Id.* at 18. This directly contradicted language from the *Post-Preliminary Analysis Memo* in which Commerce specifically used the benchmarks provided by GFCL. Commerce's *IDM* is also inaccurate, describing the Ahmedabad Benchmark as a "private auction of industrial land in Ahmedabad, Gujarat" and the Mumbai Benchmark as a "private auction of industrial land in Mumbai, Maharashtra." *Id.* at 15. The record is devoid of evidence which would lead an objective observer to determine that these auctions were private, and one must make certain inferences to find that the land will be used as industrial land <u>in the future</u>. Despite arguments put on the record by GFCL and the Government of India and record evidence to the contrary, Commerce stated that "the record only indicates that these parcels were suitable for industrial use," reasoning only that "both land parcels were advertised as former textile mill land." *Id.* at 16. Additionally, unchanged from the *Preliminary Determination* and *Post-Preliminary Determination*, Commerce continued to find that "IWL's production of wind energy was primarily dedicated to GFCL's downstream production and that Commerce should continue to countervail subsidies received by IWL." *Id.* at 12.

AFDOCS/25630986.3

40.     The *Final Determination* is unsupported by substantial evidence on the record and is otherwise not in accordance with law with respect to the matters set forth in the following counts.

## STATEMENT OF CLAIMS

### COUNT I

41.     The facts and allegations contained in paragraphs 1 through 40 are restated and incorporated herein by reference.

42.     Commerce's determination to rely on the Ahmedabad Benchmark does not consider GFCL's many arguments on the record, citing record evidence contrary to Commerce's decision.  GFCL provided approximately ten different arguments in its case and rebuttal briefs explaining why the Ahmedabad Benchmark is not useable under Commerce's regulations, that Commerce failed to address in its final determination.

43.     The Statement of Administrative Action explains that Commerce "must specifically reference in their determinations factors and arguments that are material and relevant, or must provide a discussion or explanation in the determination that renders evident the agency's treatment of a factor or argument."  Statement of Administrative Action, accompanying H. Rep. No. 103–826(I), at 892, reprinted in 1994 U.S.C.C.A.N. 4040, 4215 ("SAA").  Agencies "must address significant arguments and evidence which seriously undermines its reasoning and conclusions" and, when they do not, this Court may find that Commerce's "decision is not substantially supported and explained."  *Altx, Inc. v. United States*, 167 F. Supp.2d 1353, 1374 (Ct. Int'l Trade 2001).

44.     Commerce's determination is thus contrary to law and should be remanded for Commerce to meaningfully consider GFCL's arguments on the administrative record.

**COUNT II**

45.     The facts and allegations contained in paragraphs 1 through 44 are restated and incorporated herein by reference.

46.     Commerce's determination to rely on the Mumbai Benchmark, averaged with the Ahmedabad Benchmark, to calculate a benefit with respect to the SIDC's provision of land to IWL is not based on substantial evidence on the record and is otherwise contrary to law. Commerce deviated from its practice and did not apply the proper analysis to determine whether GFCL's land purchases were for adequate remuneration.

47.     If there is a purchase of a good from the government, such as land, Commerce will identify from the record an appropriate benchmark to measure the adequacy of remuneration, *i.e.*, the benefit.  Commerce's regulations provide a hierarchy of preferred benchmarks, with a preference for "actual transaction between private parties, actual imports, or, in certain circumstances, actual sales from competitive run government auctions." 19 C.F.R. § 351.511(a)(2)(i).  When choosing a transaction for comparison, Commerce "will consider product similarly; quantities sold, imported, or auction; and *other factors affecting comparability*." 19 C.F.R. § 351.511(a)(2)(i); *see also* 19 U.S.C. § 1677(5)(E)(iv)("{T}he adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review.  Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale.").

48.     Commerce's practice is to rely on the record evidence to determine whether the land is comparable, reviewing, among other factors, the type of land and its state of development, location, price information, and whether the proposed benchmark price represents an actual sale. *See Polyethylene Terephthalate Resin from the Sultanate of Oman,* 81 Fed. Reg. 13321 (Dep't of

Commerce Mar. 14, 2016) (final neg. CVD determ.), and accompanying Issues and Decision

Memorandum at Comment 3; *Forged Steel Fittings from the People's Republic of China*, 83 Fed.

Reg. 50342 (Dep't of Commerce Oct. 5, 2018) (final affirm. CVD determ.), and accompanying

Issues and Decision Memorandum at 10 (Comment 1).

      49.    Here, the evidence on the record demonstrates that the Mumbai Benchmark is

aberrational and not comparable to the land provided by the SIDC to IWL.  *See* GFCL Case Br. at

14-22. Commerce's *Final Determination*, in which it determines that "there is no alternative

information on the record regarding industrial land prices" and that there is "no substantive

support for excluding the Mumbai transaction from the benchmark" does not adequately consider

the multitude of record evidence to the contrary.  Evidence on the record demonstrates that this

land is prime real estate, located "in the heart of the metropolis;" was "won" in an auction, but

not that there was a final transaction; and no evidence that any transaction would be between two

private parties.  Further, the Mumbai Benchmark does not satisfy Commerce's other

comparability factors, *i.e.* its proximity to the land at issue.  Mumbai is a coastal city almost four

hundred miles from the Madhya Pradesh border, *see* Petitioner August 11, 2021 Benchmark

Submission at Exh. 4, and Commerce has previously determined that Mumbai is not comparable

to SIDC land.  *Utility Scale Wind Towers From India,* 86 Fed. Reg. 56896 (Dep't Commerce Oct.

13, 2021) (final affirm. CVD determ.), and accompanying Issues & Decision Memorandum (Oct.

6, 2021), at 42 (acknowledging the "high land prices and saturation in Mumbai").  There is ample

evidence on the record demonstrating that the Mumbai Benchmark is not comparable to the land

provided by the SIDC to IWL.  *See* GFCL Case Br. at 14-22.

      50.    In contrast, benchmark information provided by GFCL reflects comparable

transactions which may be used to determine the adequacy of remuneration on the provision of

land to IWL.  GFCL provided information demonstrating that it purchased agricultural land for industrial purposes, the land was purchased from independent sellers, and the land was purchased in Gujarat.  *See* GFCL Rebuttal Br. at 4. Indeed, the documents provided by GFCL stated that the land was agricultural land that was purchased for industrial use.  *See* Initial Questionnaire Response at Exhibit 16(h) – Exhibit 16(l); *see also* June 11, 2021 Response at 2-4, Exhs. S2-4 through S2-5.  Commerce rejected this argument with no explanation or analysis of the information put on the record by GFCL.  Thus, Commerce has not conducted a fulsome review of the record in making its determination.  *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (requiring that the record be reviewed in its entirety, "including whatever fairly detracts from the substantiality of the evidence.").

51.    Thus, Commerce's use of the Mumbai Benchmark in order to calculate a benefit with respect to the SIDC's provision of land to IWL is not based on substantial evidence on the record and is otherwise contrary to law.

## COUNT III

52.    The facts and allegations contained in paragraphs 1 through 51 are restated and incorporated herein by reference.

53.    Prior to assigning a company a CVD rate for a certain program, Commerce must determine whether that program provides a financial contribution by an authority and that the program provides a benefit which is specific. *See* 19 U.S.C. § 1677(5)(B)(i) ("a subsidy is described . . . in the case in which an authority (i) provides a financial contribution . . ."); 19 U.S.C. § 1677(5A) (requiring that a subsidy be specific and defining specificity).

54.    In the *Preliminary Determination*, Commerce determined that the "GIDC's Provision of Land for LTAR . . . did *not* confer a measurable benefit during the POI."  *PDM* at 26.  Thus, Commerce did "not reach a preliminary determination as to whether there is a financial

contribution or specificity for this program." *Id.* In the *IDM*, Commerce only addresses the GIDC's provision of land to say that it is "using the Ahmedabad, Gujarat, land benchmark" to calculate a benefit. *Id.* at 21.

55.     Commerce must determine on the facts of this record that the GIDC provision of land to GFCL meets the statutory criteria to be treated as a countervailable subsidy. Until then, Commerce's *Final Determination* is not in accordance with law.

## COUNT IV

56.     The facts and allegations contained in paragraphs 1 through 55 are restated and incorporated herein by reference.

57.     Commerce's determination to rely on the Ahmedabad Benchmark to calculate a benefit with respect to GFCL's land purchases within the GIDC is not based on substantial evidence and is otherwise contrary to law. Commerce ignored record evidence which detracts from its final determination and failed to address GFCL's arguments challenging the use of the Ahmedabad benchmark. Nor did Commerce explain why it used benchmarks provided by GFCL in its 2017 investigation of PTFE resin from India, and its *Post-Preliminary Calculation Memo* but not in the *Final Determination*. These reasons alone support a remand to Commerce for reconsideration of its use of the Ahmedabad Benchmark. *See, e.g. Clearon Corp. v. United States*, No. 13-00073, 2014 WL 3643332, at *6, 7 (Ct. Int'l Trade July 24, 2014) (acknowledging Commerce's "substantial and legitimate concern" in wanting to address issues at the administrative level prior to before the Court).

58.     If there is a purchase of a good from the government, such as land, Commerce will identify from the record an appropriate benchmark to measure the adequacy of remuneration, *i.e.*, the benefit. *See supra* ¶¶ 47-48 (discussing Commerce's analysis pursuant to 19 C.F.R. § 351.511(a)(2)(i); *see also* 19 U.S.C. § 1677(5)(E)(iv)).

AFDOCS/25630986.3

59.     In its *Final Determination*, Commerce does not acknowledge that there is no evidence on the record that the Ahmedabad Benchmark is based on an actual sale.  The news article submitted by the Petitioner only states that there was a "winning bidder," and, indeed, the High Court retained the earnest money deposit from the second highest bidder "in case the top bidder backs out."  Petitioner's June Benchmark Submission at Exh. 6.  The article states that the winning bidder has three months to pay the bid amount.  *Id.*  The article does not indicate whether this auction was private or whether this auction was competitively-run.  *Id.*  This benchmark should have been rejected on these facts alone.

60.     The evidence on the record does not support a determination that the Ahmedabad land is comparable to either SIDC or GIDC land.  Indeed, as stated above, the Ahmedabad Benchmark does not represent a transaction at all, but a tentative bid value for a commercial textile mill site that has been unused for *twenty-seven years.* Further, there is no proof on the record of an actual sale or of the intended use of this specific land parcel once it was purchased. Instead, the record shows that the Ahmedabad land is urban, dissimilar from the SIDC or GIDC land where IWL's wind turbine production occurs and GFCL's production of granular PTFE resin occurs, respectively.  *See* GFCL Rebuttal Br. at 3; Petitioner's June Benchmark Submission at Exhibit 6 ("Auction of textile mill land fetches Rs 71 crore").  Therefore, Commerce's use of the Ahmedabad Benchmark is inconsistent with Commerce's regulations and is thus contrary to law.

61.     In contrast, the benchmark information provided by GFCL represents similar land purchases to the SIDC's provision of land or the GIDC's provision of land.  GFCL provided on the record information demonstrating that it purchased agricultural land for industrial purposes, the land was purchased from independent sellers, and the land was purchased in Gujarat.  *See*

21

GFCL Rebuttal Br. at 4.  Commerce rejected this argument with no explanation or analysis of the information put on the record by GFCL.  Thus, Commerce has not conducted a fulsome review of the record in making its determination.  *See Atl. Sugar*, 744 F.2d at 1562 (requiring that the record be reviewed in its entirety, "including whatever fairly detracts from the substantiality of the evidence.").

62.    Commerce's final determination which concludes simply that it is "not using GFCL's transactions" as benchmarks to determine whether the land provided to IWL in Madhya Pradesh was for adequate remuneration is not based on substantial evidence.

63.    Commerce's determination in the *Final Determination* also differs completely from its analysis and determinations in the *2017 Final PTFE Resin from India* investigation, which contained nearly identical facts, including identical respondents and the same land purchases within and outside the GIDC, without adequate explanation.  Although Commerce's "conclusions from earlier segments" may not "serve as precedent controlling" future conclusions with respect to the same antidumping or countervailing duty order, "courts 'look for a reasoned analysis or explanation' from Commerce to ensure that the agency has not abused its discretion in departing from prior analysis."  *Içdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 498 F. Supp. 3d 1345, 1365 (Ct. Int'l Trade 2021) (quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998)).  "{A}n agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).  "{C}onsistency has long been a core interest of administrative law, and inconsistent treatment is inherently significant."  *DAK Americas LLC v. United States*, 456 F. Supp. 2d 1340, 1355-56 (Ct. Int'l Trade 2020) (citing

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Thus, Commerce's final determination is arbitrary, contrary to law, and not based on substantial evidence.

## COUNT V

64.    The facts and allegations contained in paragraphs 1 through 63 are restated and incorporated herein by reference.

65.    Where Commerce makes a determination different from its past determinations based on similar facts, Commerce must provide an explanation for such a departure.  *See supra* ¶ 63 (explaining the legal authority asserting that Commerce must explain departures from its prior analysis).

66.    By conducting an investigation of IWL, Commerce has deviated from its practice and the law without providing adequate explanation.  Commerce's determination that "IWL's production of wind energy was primarily dedicated to GFCL's downstream production" is not based on substantial evidence or in accordance with law.  Although IWL is a cross-owned company, it does not provide an input primarily dedicated to the subject merchandise (granular PTFE resin) and, therefore, any benefit from subsidies provided to IWL cannot be attributed to GFCL. Indeed, in its 2017 investigation of PTFE resin from India, Commerce affirmatively did not investigate IWL.  *See 2017 Prelim. PTFE Resin from India.*

67.    Commerce's analysis of whether the power supplied by IWL can be attributed to the downstream products, rather than the downstream product (singular subject merchandise), is not in accordance with law.  *See* 19 C.F.R. § 351.525(b)(6)(iv).  PTFE resin is the product under investigation, not the myriad of products – including subject and non-subject merchandise – produced at GFCL's Dahej plant.  *See* GFCL Case Br. at 10; April 15, 2021 Questionnaire Response at Exhibit S-5(b).  Although Commerce states that its determination "depends on the

specific factual situations presented," Commerce's analysis ignores pertinent record evidence which demonstrates that inputs provided by IWL are not primarily dedicated to the production of subject merchandise. *See IDM* at 11.

68.   Commerce's determination in the *Final Determination* differs completely from its analysis and determinations in the *2017 Prelim. PTFE Resin from India*, which contained nearly identical facts, including identical respondents, without adequate explanation, and, thus, Commerce's final determination is arbitrary, contrary to law, and not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(a)   Hold that Commerce's *Final Determination* was not in accordance with law and was unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b)   Remand the *Final Determination* to Commerce for a determination consistent with the opinion of this Court; and

(c)   Grant such additional relief as the Court may deem just and proper.

**/s/ John M. Gurley**
John M. Gurley
Diana Dimitriuc Quaia
Jessica R. DiPietro

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 857-6013

*Counsel to Gujarat Fluorochemicals Limited*

Dated: April 12, 2022

AFDOCS/25630986.3