Slip Op. No. 22-63

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **GUJARAT FLUOROCHEMICALS LIMITED,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Timothy C. Stanceu, Judge |
| Defendant, | Court No. 22-00120 |
| and | |
| **DAIKIN AMERICA, INC.,** | |
| Defendant-intervenor. | |

## OPINION AND ORDER

[Denying plaintiff's motion for injunctive relief in litigation contesting an agency determination in a countervailing duty investigation]

Dated: June 9, 2022

*John M. Gurley*, ArentFox Schiff LLP, of Washington, D.C., for plaintiff. With him on the submissions were *Diana Dimitriuc Quaia* and *Jessica R. DiPietro*. Also appearing are *Matthew M. Nolan* and *Wendy Qiu*.

*Daniel F. Roland*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the response were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Claudia Burke*, Assistant Director. Of counsel on the response was *Paul K. Keith*, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

*Luke A. Meisner*, Schagrin Associates, of Washington, D.C., for defendant-intervenor.  Appearing with him are *Roger B. Schagrin, Benjamin J. Bay, Christopher T. Cloutier, Elizabeth J. Drake, Jeffrey D. Gerrish, Joseph A. Laroski, Jr., Kelsey M. Rule, Michelle R. Avrutin, Nicholas J. Birch, Saad Y. Chalchal*, and *William A. Fennell*.

Stanceu, Judge: Plaintiff Gujarat Fluorochemicals Limited ("GFCL" or "GFL") is an Indian producer of granular polytetrafluoroethylene ("PTFE").  GFCL brought this action to contest a decision (the "Final Determination") of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in a countervailing duty ("CVD") investigation of imports of granular PTFE resin from India and has filed a motion for injunctions.  The court denies plaintiff's motion as it applies to a preliminary injunction that plaintiff seeks to lower the rate of cash deposits, holding that plaintiff has not shown the likelihood of irreparable harm in the absence of such a preliminary injunction.  The court also denies, without prejudice, plaintiff's motion as to an injunction to prohibit liquidation of entries during the pendency of this litigation, concluding that GFCL has failed to propose an injunction in a technical form that the court may issue.

## I. Background

Plaintiff brought this action on April 12, 2022, asserting subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), according to which the court reviews actions commenced under 19 U.S.C. § 1516a.[1]

---

[1] All citations to the United States Code herein are to the 2018 edition.

Summons, ECF No. 1; Compl. ¶¶ 5–6, ECF No. 6.  The next day, plaintiff filed the instant motion for injunctive relief and accompanying brief.  Pl.'s Mem. of Law in Supp. of Its Mot. for a Prelim. Inj. (Apr. 13, 2022), ECF Nos. 9 (conf.), 10 (public) ("Pl.'s Br."); Pl.'s Mot for a Prelim. Inj. (Apr. 13, 2022), ECF Nos. 9-3 (conf.), 10-1 (public) ("Pl.'s Mot.").[2]

The decision contested in this litigation, the "Final Determination," was published as *Granular Polytetrafluoroethylene Resin From India: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination*, 87 Fed. Reg. 3,765 (Int'l Trade Admin. Jan. 25, 2022) ("*Final Determination*").  Following an affirmative determination of material injury to a U.S. domestic industry by the U.S International Trade Commission ("Commission" or "ITC"), the Final Determination culminated in the Department's issuing a countervailing duty order ("CVD Order") on PTFE from India.  *See Granular Polytetrafluoroethylene (PTFE) Resin from India and Russia; Determinations*, 87 Fed. Reg. 14,038 (Int'l Trade Comm'n Mar. 11, 2022); *see also Granular Polytetrafluoroethylene Resin from India and the Russian Federation: Countervailing Duty Orders*, 87 Fed. Reg. 14,509 (Int'l Trade Admin. Mar. 15, 2022) ("*CVD Order*").

Plaintiff seeks an injunction that would prohibit, during the pendency of this litigation (including any remands and appeals), the collection of cash deposits on

---

[2] All citations in this Opinion and Order are to public documents.

entries of PTFE resin produced by GFCL at the 31.89% subsidy rate Commerce calculated for GFCL in the Final Determination. *See Final Determination*, 87 Fed. Reg. at 3,766. The injunction it seeks would direct, instead, the collection of cash deposits at the 4.75% subsidy rate Commerce calculated in its preliminary determination. *See Granular Polytetrafluoroethylene Resin From India: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 86 Fed. Reg. 35,479, 35,480 (Int'l Trade Admin. July 6, 2021) ("*Preliminary Determination*"). Plaintiff also seeks a "statutory" injunction under section 516A(c)(2) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(c)(2) ("Tariff Act"), to prohibit liquidation of its entries that are subject to the CVD Order. Pl.'s Br. 2.

Defendant opposes plaintiff's motion as to the rate of cash deposit collection, arguing that under "well settled law" plaintiff fails to establish the necessary factors to obtain the "rare and extreme relief it seeks." Def.'s Partial Opp'n to Pl.'s Mot. for a Prelim. Inj. 2–3 (May 4, 2022), ECF Nos. 13 (public), 14 (conf.) ("Def.'s Resp."). With respect to the requested injunction against liquidation, "Commerce consents to a limited statutory injunction with a finite end date at the end of the first review period" as opposed to "the open-ended scope of GFL's request—relief GFL does not meaningfully attempt to demonstrate is warranted." *Id.* at 3.

Defendant-intervenor Daikin America, Inc. has not taken a position on plaintiff's motion. *See* Order (May 11, 2022), ECF No. 23 (granting consent motion of Daikin America, Inc. (May 11, 2022), ECF No. 16, to intervene as of right pursuant to 28 U.S.C. § 2631(j)(1)(B)).

## II. Discussion

### A. GFCL's Preliminary Injunction Motion Regarding Cash Deposits

If Commerce determines that "a countervailable subsidy is being provided with respect to the subject merchandise," 19 U.S.C. § 1671d(a)(1), it is required by the Tariff Act to "determine an estimated individual countervailable subsidy rate for each exporter and producer individually investigated," *id.* § 1671d(c)(1)(B)(i)(I). The Tariff Act directs, further, that:

> Within 7 days after being notified by the Commission of an affirmative determination under section 1671d(b) of this title, the administering authority [i.e., Commerce] shall publish a countervailing duty order which— . . . requires the deposit of estimated countervailing duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited.

*Id.* § 1671e(a)(3). In implementing these statutory provisions, the CVD Order provided that "[o]n or after the date of publication of the ITC's final injury determinations in the **Federal Register**, [U.S. Customs and Border Protection] must require, at the same time as importers would normally deposit estimated duties on this merchandise, a cash deposit equal to the rates noted below." *CVD Order*, 87 Fed. Reg. at 14,510. The CVD Order specified a deposit rate of 31.89% for GFCL. *Id.*

When an interested party contests a final countervailing duty determination that Commerce reached under 19 U.S.C. § 1671d, as plaintiff contests here, this Court "may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances." 19 U.S.C. § 1516a(c)(2). Plaintiff seeks such an injunction, but the other injunction sought in plaintiff's motion, which is a preliminary injunction directed to the collection of cash deposits, is of a type not specifically provided for in the Tariff Act, or customary in international trade law. To the contrary, the Tariff Act, in 19 U.S.C. § 1671e(a)(3), directs Commerce to order the "deposit of estimated countervailing duties" that it determines for an exporter or producer in a final affirmative countervailing duty determination made according to § 1671d(c)(1)(B)(i)(I). Any preliminary injunction is an "extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citations omitted), but that is particularly the case where, as here, ordering the requested relief would depart from the ordinary procedure Congress established. Under that ordinary procedure, it is Commerce, not this Court, that determines the rate of deposits of estimated countervailing duties pending judicial review following a CVD investigation.

Still, the Tariff Act does not prohibit a preliminary injunction directed to a cash deposit rate, which would depend upon the exercise of the court's general authority

(with exceptions not here relevant) to order any "form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. § 2643(c)(1). The court does not imply that a circumstance necessitating a preliminary injunction directed to a cash deposit rate could never arise. But a plaintiff faces a particularly heavy burden in demonstrating a need for a remedy beyond those routinely available under the Tariff Act upon adjudication of the merits of its claims, i.e., a remand order and refund of cash deposits.

To obtain any preliminary injunction, GFCL must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities is in its favor, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (citations omitted). While plaintiff contends that no one factor is determinative, *Winter* instructs that a showing of likelihood of irreparable harm in the absence of the relief sought is a necessary prerequisite to a preliminary injunction. *Id*. at 22.

Plaintiff contends that absent a preliminary injunction to lower its cash deposit rate, it will suffer irreparable reputational and economic harm pending a decision on the merits. Pl.'s Br. 44. It alleges that "GFCL has contractual commitments to deliver granular PTFE resin to U.S. customers on the basis of annual contracts and other contracts that will [be] fulfilled at a loss to GFCL." *Id.* at 45. Plaintiff also alleges that

"[d]ue to the significant duty increases caused by the final CVD rates, GFCL has been forced to reach out to all of its existing customers to mitigate and renegotiate its contracts with them." *Id.* at 46. GFCL asserts, further, that "this effort by GFCL will have long lasting negative consequences on its good will, reputation and brand in the United States" and that "[c]ustomers will remember that GFCL asked to renegotiate contract terms and push on price increases resulting in business uncertainty and loss of customers." *Id*. It adds that "[e]ventually, these customers will be pushed to work with GFCL's competitors, leaving GFCL with no avenue to reestablish these lost relationships" and that "[d]ue to the high rates established by the *Final Determination*, GFCL will also have to adjust its business plans and behaviors, resulting in lost business opportunities, and a reduction in available granular PTFE resin for the U.S. market." *Id*. (citation omitted). Plaintiff summarizes these points as follows:

> Because of the increased CVD cash deposits that will be due on GFCL's exports to U.S. customers and GFCL's inability to pass on these duty increases to U.S. customers with whom it has contractual obligations, the threat of lost revenues on U.S. sales through the next year is immediate and not speculative. Not only will U.S. customers look elsewhere for supply but they will also look for processing of PTFE resin outside the United States, resulting in business uncertainty and in decreased demand for granular PTFE resin in the U.S. market. If these trends take hold, they will be nearly irreversible.

*Id*. at 47. To support its assertions, plaintiff relies on an affidavit submitted by Kapil Malhotra, the Global Business Unit Head- Fluoropolymers of GFCL. *See* Pl.'s Br., Exh. 20. In relevant part, the affidavit includes a chart titled "Gujarat Fluorochemicals

Limited Estimated Loss of Revenue and Cost Increases on Exports of Granular PTFE Resin, Due to Final CVD Duty Rate." *Id.* at 4. These estimations are described as based, in part, on the "customer's reactions thus far." *Id*. at 3

For the purpose of ruling on plaintiff's motion for an injunction on the cash deposit rate, the court presumes that the consequences plaintiff alleges—e.g., "lost business opportunities," inability to pass on costs and the attendant "threat of lost revenues on U.S sales through the next year," "business uncertainty," and "decreased demand"—are true. Pl.'s Br. 46–47. But even upon doing so, the court must conclude that plaintiff has not made allegations of likely harm sufficient to entitle it to the preliminary injunction it seeks.[3] The types of harm plaintiff alleges are not unlike those that reasonably could be expected to occur in a typical countervailing duty investigation involving a similar cash deposit rate. Plaintiff has not put forth allegations sufficient to cause the court to conclude that the prospect of future refunds of excess cash deposits for importers of record, along with a lower deposit rate at that time, will be an inadequate remedy under the statutory scheme.

Plaintiff alleges, further, that it "will suffer significant financial harm as a consequence of the sudden increase in the CVD rate and having to post large CVD cash

---

[3] Because the court presumes plaintiff's allegations to be true for purposes of ruling on its motion for a preliminary injunction, the court has not conducted an evidentiary hearing on the issue of the likelihood of irreparable harm.

deposits." *Id.* at 46. This allegation is difficult to comprehend. In the standing section of its complaint, Compl. ¶ 7, GFCL describes itself as an exporter and producer of the subject merchandise, not as an importer of record that would be required to post cash deposits upon making entry. Nor does it state that it is speaking on behalf of an affiliated importer that would have "to post large CVD cash deposits." Pl.'s Br. 46. But even were plaintiff presumed to incur the expense of cash deposits until such time as refunds may be available, its allegations would not support the extraordinary remedy being sought.

In summary, plaintiff has not alleged facts sufficient to show that the current cash deposit rate is likely to cause it serious, irreparable harm, nor has it shown that the ordinary remedies available under the Tariff Act upon judicial review are likely to be inadequate. GFCL having failed to meet an essential prerequisite for a preliminary injunction as established in *Winter*, 555 U.S. at 22, the court will deny plaintiff's motion as it pertains to a preliminary injunction to lower the current cash deposit rate.

### B. Injunction to Prevent the Liquidation of Entries Affected by this Litigation

GFCL seeks an injunction under 19 U.S.C. § 1516a(c)(2) to prohibit the government from "issuing instructions to liquidate or making or permitting liquidation of Plaintiff's unliquidated entries subject to the Order" that would "expire upon entry of a final and conclusive court decision in this litigation, including all appeals, as provided in 19 U.S.C. §1516a(e)." Pl.'s Mot. 2; Pl.'s Mot., Draft Order 2. Defendant

responds that this court should "deny GFL's request for an injunction against liquidation with an indeterminate scope and instead issue a limited injunction consistent with Form 24 that would end on February 28, 2023—the end of the first review period." Def.'s Resp. 1.  Defendant "consents to a limited statutory injunction consistent with the terms of Form 24 but opposes the indeterminate aspect of GFL's requested relief as to entries that will be made after February 28, 2023 (the 'Disputed Entries')." *Id*. at 20.  Defendant argues that "GFL has not shown entitlement to an injunction against liquidation with an indeterminate scope," adding that "GFL largely ignores that it seeks an injunction against liquidation, and it makes no effort to address the duration of its proposed relief." *Id*.

The purpose of an injunction entered under § 1516a(c)(2) (often referred to as a "statutory" injunction) is to preserve the court's ability to provide relief should the movant prevail on the merits. *Ugine & Alz Belg. v. United States*, 452 F.3d 1289, 1297 (Fed. Cir. 2006).  Injunctions under 19 U.S.C. § 1516a(c)(2) are not "extraordinary" and routinely are granted in cases seeking judicial review under the Section 516A of the Tariff Act, 19 U.S.C. §1516a. *See Husteel Co., Ltd. v. United States*, 38 CIT __, __, 34 F. Supp. 3d 1355, 1359 (2014) ("Because of the unique nature of antidumping and countervailing duty challenges, the court routinely enjoins liquidation to prevent irreparable harm to a party challenging the antidumping or countervailing duty rate." (citing *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014))).  In the

absence of an injunction in some form, the attachment of finality to the liquidation of the entries of merchandise covered by the contested determination, 19 U.S.C. § 1516a(c)(2), may place those entries beyond the reach of a court-ordered remedy imposed at the conclusion of the litigation and may deny the plaintiff the opportunity to obtain meaningful judicial review of the contested agency action. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983). The prospect of this type of harm to plaintiff is present in this litigation.

Parties to an action brought under Section 516A may agree upon the terms of a statutory injunction according to 19 U.S.C. § 1516a(c)(2) by submission of an executed USCIT Form 24. In this case, the parties have not done so. Moreover, plaintiff's draft order informs the court only that plaintiff seeks an injunction against "liquidation of Plaintiff's unliquidated entries subject to the [CVD] *Order*," Pl.'s Mot., Draft Order 2, and offers no additional details. It is not clear what is meant by "Plaintiff's unliquidated entries": it is not apparent that plaintiff could have its own entries, and the reference might mean either entries of merchandise produced by plaintiff, or of merchandise exported by plaintiff. There is no attempt to specify the technical parameters that are addressed in USCIT Form 24. *See, e.g.*, *Mosaic Co. v. United States*, 45 CIT __, __, 540 F. Supp. 3d 1330, 1337–38 (2021); *see also* USCIT Rules, Appendix of Forms, Specific Instructions - Form 24. Beyond the stated, and inadequate, terms of its draft order, plaintiff leaves it to the court to develop an order of injunction that would

satisfy the multiple requirements of a statutory injunction in an action contesting the final determination in a countervailing duty investigation. This the court declines to do.

Defendant has submitted a draft order of injunction that addresses details that plaintiff's draft order does not. *See* Def.'s Resp., Draft Order. Since the filing of this document, plaintiff has made no submissions, and the court, therefore, has not been informed as to whether plaintiff consents to a statutory injunction entered according to 19 U.S.C. § 1516a(c)(2) on the terms defendant proposes.

### III. CONCLUSION AND ORDER

In conclusion, plaintiff has not alleged sufficient facts to establish that it is likely to suffer irreparable harm in the absence of preliminary relief regarding its payment of cash deposits at the CVD rate established in the Final Determination, and, accordingly, is not entitled to the preliminary injunction it seeks.

While the circumstances of this litigation warrant the issuance of a statutory injunction, in some form, under 19 U.S.C. §1516a(c)(2), plaintiff has not placed before the court a draft order in a form that the court may issue.

Upon consideration of plaintiff's motion for a preliminary injunction, Mot. for Prelim. Inj. (Apr. 13, 2022), ECFs Nos. 9-3 (conf.), 10-1 (public), plaintiff's brief in support of its motion, Pl.'s Mem. of Law in Supp. of Its Mot. for a Prelim. Inj. (Apr. 13, 2022), ECF Nos. 9 (conf.), 10 (public), defendant's response, Def.'s Partial Opp'n to Pl.'s

Mot. for a Prelim. Inj. (May 4, 2022), ECF Nos. 13 (public), 14 (conf.), and all papers and proceedings had herein, and upon due deliberation, it is hereby

      **ORDERED** that plaintiff's motion for a preliminary injunction directed to the cash deposit rate be, and hereby is, denied; it is further

      **ORDERED** that plaintiff's motion for an injunction under 19 U.S.C. § 1516a(c)(2) is denied without prejudice for plaintiff's failure to provide the court a draft order in a satisfactory form; it is further

      **ORDERED** that plaintiff shall have 30 days from the date of this Opinion and Order in which to renew its motion for an injunction under 19 U.S.C. § 1516a(c)(2) and inform the court whether plaintiff consents to an injunction under 19 U.S.C. § 1516a(c)(2) in the form of defendant's draft order (May 4, 2022), ECF Nos. 13 (public), 14 (conf.), and if it does not so consent, to submit its own draft order and the reasons for its objections to defendant's draft order; and it is further

      **ORDERED** that defendant-intervenor, should it so choose, may submit comments to the court on defendant's draft order within 30 days of the date of this Opinion and Order.

                                                                            /s/ Timothy C. Stanceu
                                                                            Timothy C. Stanceu
                                                                            Judge

Dated: June 9, 2022
        New York, New York