# UNITED STATES COURT OF INTERNATIONAL TRADE
# BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE

|  |  |
|---|---|
| GUJARAT FLUOROCHEMICALS LIMITED,<br><br>*Plaintiff*,<br>v.<br><br>THE UNITED STATES,<br><br>*Defendant,*<br>and<br><br>DAIKIN AMERICA INC.,<br><br>*Defendant-Intervenor.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Court No. 22-00120<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR A STATUTORY INJUNCTION

Pursuant to the Court's opinion and order dated June 9, 2022,[1] denying Plaintiff Gujarat Fluorochemicals Limited's ("GFCL") motion for injunctive relief,[2] GFCL, by and through its undersigned attorneys, hereby respectfully submits this renewed motion for a statutory injunction under 19 U.S.C. § 1516a(c)(2) to prohibit the liquidation of entries during the pendency of this litigation substantially in the form of the Defendant's, United States, draft order.[3]

---

[1] *Gujarat Fluorochemicals Ltd. v. United States*, No. 22-00120, Slip. Op. 22-63 (Ct. Int'l Trade June 9, 2022), ECF No. 28 ("Slip Op 22-63").

[2] Pl.'s Mot. for Inj. Relief (Apr. 13, 2022), ECF Nos. 9, 10.

[3] Counsel for Plaintiff notes that it conferred with counsel for Defendant and agreed to make one revision to Defendant's draft order to correct the end date of the injunction to correspond to the end date of the first administrative review period. Because this matter pertains to a countervailing duty order, the Department of Commerce intends to conduct its first

1

Although the Court held that GFCL "is not entitled to the preliminary injunction it seeks" with respect to the cash deposits for estimated countervailing ("CVD") duties, the Court held that "the circumstances of this litigation warrant the issuance of a statutory injunction, in some form, under 19 U.S.C. § 1516a(c)(2)."  Slip Op. 22-63, at 13.  The Court further explained that GFCL "has not placed before the court a draft order in a form that the court may issue."  *Id.*  Therefore, the Court denied without prejudice GFCL's motion to prohibit liquidation of entries during litigation due to its failure to provide a proper order.  Slip Op. 22-63, at 2.

Specifically, the Court ordered:

> {T}hat plaintiff shall have 30 days from the date of this Opinion and Order in which to renew its motion for an injunction under 19 U.S.C. § 1516a(c)(2) and inform the court whether plaintiff consents to an injunction under 19 U.S.C. § 1516a(c)(2) in the form of defendant's draft order (May 4, 2022), ECF Nos. 13 (public), 14 (conf.), and if it does not so consent, to submit its own draft order and the reasons for its objections to defendant's draft order{.}

Slip Op. 22-63, at 14.

As permitted under the Court's order, Plaintiff GFCL renews its motion for a preliminary (statutory) injunction against liquidation of entries and informs this Court that it consents to the suggested injunction language in Defendant's draft order, as revised to correct the proposed end date for the injunction to December 31, 2022.  After consulting with the parties, Plaintiff proposes the draft Order attached to this motion which is nearly identical to the Defendant's draft order, only changing the date of "February 28, 2023" to "December 31, 2022."

GFCL believes that this language conforms with the technical parameters addressed in USCIT Form 24 and, thus, provides the information necessary for the Court to issue a statutory

---

administrative review on a calendar-year basis, consistent with its practice.  Thus, the renewed proposed end date for this injunction is December 31, 2022, rather than February 28, 2023, as proposed in Defendant's draft order.

injunction.  *See* USCIT Rules, Appendix of Forms, Specific Instructions - Form 24.

As Plaintiff is renewing its motion for an injunction pursuant to the Court's opinion and order, Plaintiff also renews its arguments explaining why it is entitled to a statutory injunction pursuant to 19 U.S.C. § 1516a(c)(2) below.[4]  This motion is timely filed pursuant to the Court's opinion and order, which provided Plaintiff 30 days from the date of the opinion, June 9, 2022, until July 8, 2022, to "renew its motion for injunction."  Slip Op. 22-63, at 14.

## ARGUMENT

Pursuant to Rules 7(b), 56.2(a), and 65(a) of the Rules of this Court, the Court's opinion and order, Slip Op. 22-63, and on the grounds set forth below, Plaintiff GFCL moves for a Statutory Injunction to enjoin the Defendant in this action, the United States, together with the delegates, officers, agents, servants and employees of the United States Customs and Border Protection ("CBP") and the United States Department of Commerce ("Commerce"), during the pendency of this litigation, including all appeals, from issuing instructions to liquidate or making or permitting liquidation of unliquidated entries of PTFE resin from India:

(1) That were produced and/or exported by Gujarat Fluorochemicals Limited; Inox Leasing and Finance Limited; Inox Wind Limited;

(2) That were the subject of the United States Department of Commerce's final determination in *Granular Polytetrafluoroethylene Resin From India: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination*, 87 Fed. Reg. 3,765 (Dep't Commerce Jan. 25, 2022) and *Granular Polytetrafluoroethylene Resin From India and the Russian Federation: Countervailing Duty Orders*, 87 Fed. Reg. 14,509 (Dep't Commerce Mar. 15, 2022); and

---

[4] The practice comments following Rule 56.2 of the Court of International Trade indicate that "Form 24 may be filed with the Court in lieu of a motion where the parties have consented to the terms of the statutory injunction as set forth in the form."  Although Plaintiff now consents to the language provided by Defendant in its Draft Order, Plaintiff is proceeding with "regular motion practice" because its initial proposed injunction language was inconsistent with the language provided by Defendant.  USCIT Form 24-1, Instructions.

3

> (3) That were/are entered, or withdrawn from warehouse, for consumption into the United States during the period of July 6, 2021 through December 31, 2022, excluding any merchandise entered, or withdrawn from warehouse, for consumption, on November 3, 2021 through March 11, 2022.

Plaintiff commenced the underlying action to challenge Commerce's final determination in the countervailing duty investigation on granular PTFE resin from India and the associated Order, calculating a CVD rate for Plaintiff of 31.89 percent *ad valorem*. *See Granular Polytetrafluoroethylene Resin From India*, 87 Fed. Reg. 3,765 (Dep't Commerce Jan. 25, 2022) (final affirm. CVD & critical circum. determ.) ("*Final Determination*") and accompanying Issues & Decision Memorandum (Jan. 18, 2022), ECF No. 27-2, P.R. 248 ("I&D Memo"); *Granular Polytetrafluoroethylene from India and the Russian Federation*, 87 Fed. Reg. 14,509 (Dep't of Commerce Mar 15, 2022) ("Order"). Plaintiff contends that Commerce's actions resulted in an erroneous and unlawful subsidy rate for GFCL. *See* Compl. ¶¶ 40 – 68 (Apr. 12, 2022), ECF No. 6. On the basis of that unlawful determination, Commerce has instructed CBP to require a CVD cash deposit of 31.89 percent *ad valorem* on entries of granular PTFE resin produced by GFCL, P.R. 258 & 259. Resolution of the issues raised in Plaintiff's complaint will have a substantial impact on the CVD rate applicable to GFCL's exports and on the correct amount of CVD duties to be assessed by CBP.

The statute, 19 U.S.C. § 1516a(c)(2), grants the Court the power to order injunctive relief in challenges to certain determinations by Commerce, including a final affirmative determination in a countervailing duty investigation, upon "a proper showing that the requested relief should be granted under the circumstances."

### A. Legal Standard

In general, "{a} plaintiff seeking a preliminary injunction must establish {(1)} that he is

likely to succeed on the merits, {(2)} that he is likely to suffer irreparable harm in the absence of preliminary relief, {(3)} that the balance of equities tips in his favor, and {(4)} that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009).

By this motion, Plaintiff asserts that it meets the four requirements for a preliminary injunction to be issued: (1) GFCL will likely be irreparably injured if immediate relief is not granted; (2) GFCL can demonstrate a likelihood of success on the merits of its claim; (3) the threatened injury to GFCL outweighs the potential harm to Commerce or to others; and (4) the public interest is better served by issuing rather than by denying the injunction. *See also Wind Tower Trade Coalition v. United States,* 741 F.3d 89, 95 (Fed. Cir. 2014); *Union Steel v. United States*, 33 CIT 614, 621-622, 617 F. Supp. 2d 1373, 1381 (2009), citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

This Court has characterized as common the granting of motions to enjoin liquidation of entries pending judicial review of AD/CVD determination. *See Wind Tower Trade Coalition,* 741 F.3d at 95; *Ugine-Savoie Imphy v. United States*, 24 CIT 1246, 1249 n.3, 121 F. Supp. 2d 684, 688 n.3 (2000) ("{I}n *Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983), the {U.S.} Court of Appeals for the Federal Circuit granted plaintiffs a *per se* right to a preliminary injunction enjoining liquidation of unliquidated entries pending final judicial review of administrative review determinations."). Based on similar considerations, this Court has also granted injunctions in cases that involved judicial review of AD/CVD investigations. *See Husteel Co. v. United States*, 34 F. Supp. 3d 1355, 1359 (Ct. Int'l Trade 2014), citing *Wind Tower Trade Coalition,* 741 F.3d at 95; *Ashley Furniture Indus. v. United States*, No. 21-00283, 2022 WL 895398, at *22-24 (Ct. Int'l Trade Mar. 28, 2022). Indeed, in its Opinion in this matter,

5

the Court stated that

> {t}he purpose of an injunction entered under § 1516a(c)(2) (often referred to as a "statutory" injunction) is to preserve the court's ability to provide relief should the movant prevail on the merits. . . . Injunctions under 19 U.S.C. § 1516a(c)(2) are not "extraordinary" and routinely are granted in cases seeking judicial review under the Section 516A of the Tariff Act, 19 U.S.C. § 1516a.

Slip Op. 22-63, at 11 (internal citations omitted).

For the reasons explained herein, Plaintiff seeks a statutory injunction which covers both past entries of PTFE resin produced or exported by GFCL that are subject to the Order since July 6, 2021, the date when the preliminary measures went into effect, and future entries through the end of the first administrative review period, *i.e.* through December 31, 2022, until there is a final and conclusive decision in the litigation. *See Granular Polytetrafluoroethylene Resin from India*, 86 Fed. Reg. 35,479 (Dep't of Commerce Jul. 6, 2021) (*Prelim. CVD affirm. determ. & critical circum., alignment of final AD determ.*); *Final Determination*, 87 Fed. Reg. 3,765.

### B.  GFCL Will Likely Suffer Irreparable Harm Absent an Injunction

Injunctive relief covering entries made through the end of the first administrative review is necessary because Plaintiff will suffer irreparable harm if entries are liquidated at the CVD rate calculated in the *Final Determination* prior to the Court addressing the serious errors raised by Plaintiff. This Court has stated that "{t}he danger of liquidation pending judicial review of an investigation constitutes irreparable harm. . . . {T}he procedural complexities in the administration of antidumping and countervailing duty orders renders the threat of irreparable harm sufficiently imminent to warrant injunctive relief in connection with judicial review of an investigation." *Mid Continent Steel & Wire, Inc. v. United States*, 427 F. Supp. 3d 1375, 1382 (Ct. Int'l Trade 2020).

Irreparable harm constitutes potential harm that cannot be redressed by a legal or an

6

equitable remedy at the conclusion of the proceedings, so that a preliminary injunction is the only way of protecting the plaintiffs. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Unless the Court enjoins liquidation, entries covered by the *Final Determination* may be subject to automatic liquidation at the 31.89 percent cash deposit rate in the *Final Determination*, notwithstanding any subsequent decision of this Court not in harmony with Commerce's determination. 19 U.S.C. § 1561a(c)(1).

"The purpose of a preliminary injunction is to maintain the status quo while a case is pending." *Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States*, 61 F. Supp. 3d 1358, 1367 (Ct. Int'l Trade 2015); *see also* 19 U.S.C. § 1516a(e)(2) (providing that "entries, the liquidation of which was enjoined under subsection (c)(2) of this section, shall be liquidated in accordance with the final court decision in the action"); *Ugine & ALZ Belg. v. United States*, 452 F.3d 1289, 1297 (Fed. Cir. 2006). Enjoining CBP from liquidating entries of PTFE resin produced or exported by GFCL maintains that status quo and ensures that the Court may provide GFCL meaningful relief as it deems appropriate. Otherwise, "once the entries covered by the provisional measures are liquidated, the court cannot provide any meaningful relief." *Wind Tower Trade Coalition*, 741 F.3d at 100 (quoting *Wind Tower Trade Coalition v. United States*, 37 CIT 468, 477, 904 F. Supp. 2d 1349, 1358 (2013), *aff'd* 741 F.3d 89, 95 (Fed. Cir. 2014)). Thus, the "general rule {is} that, at least in the context of judicial review under 19 U.S.C. § 1516a, liquidation moots a party's claims pertaining to the liquidated entries." *Agro Dutch Indus. v. United States*, 589 F.3d 1187, 1190 (Fed. Cir. 2009).

In this action, GFCL is challenging certain aspects of Commerce's *Final Determination* that impact its calculated countervailing duty rate and, thus, the related duties assessed on merchandise exported to the United States. Entries subject to the *Final Determination* remain

suspended pending administrative review. *See* 19 C.F.R. § 351.211 (instructing that the assessment of duties associated with an order occurs in accordance with Commerce's instructions at the end of each administrative review requested); *see also* 19 C.F.R. § 351.212 (providing for the assessment of duties). Interested parties may then request an administrative review "during the anniversary month of the publication of an antidumping or countervailing duty order." 19 C.F.R. § 351.213(b)(1). However, if no administrative review is requested Commerce will, without additional notice, instruct CBP to assess antidumping or countervailing duties at the cash deposit rates in effect at the time of entry, *i.e.*, issue automatic liquidation instructions. 19 C.F.R. § 351.212(c). CBP may then proceed to liquidate the covered entries or the entries will be deemed liquidated at the cash deposit rate in effect at the time of entry. 19 U.S.C. § 1504(d). As the CVD Order is in effect, entries of PTFE resin from India produced or exported by GFCL may be subject to automatic liquidation at a 31.89 percent rate if no administrative review of GFCL is requested. *See* 19 C.F.R. § 351.212(c). If CBP is permitted to liquidate the entries at issue, GFCL will suffer irreparable harm because, effectively, it will be denied its right to judicial review of the *Final Determination*. This Court has also held that foreign manufacturers or exporters may suffer irreparable harm pending an AD/CVD court appeal "because of the economic loss occasioned by the liquidation of disputed entries." *NMB Sing. v. United States*, 24 CIT 1239, 1243, 120 F. Supp. 2d 1135, 1139 (2000). Consistent with the Court's Opinion that "{t}he prospect of this type of harm to plaintiff is present in this litigation," Slip Op. 22-63, at 12, an injunction will ensure that CBP does not liquidate entries of GFCL's PTFE resin that are subject to the CVD rate determined in the investigation during the

pendency of this action, which challenges the legal basis of that rate.[5]

### C. There Is a Strong Likelihood that GFCL Will Succeed on the Merits

The courts have balanced this factor against the other three criteria when considering whether to grant injunctive relief. "When the irreparable harm factor tilts decidedly in favor of the movant, the burden of showing likelihood of success on the merits is lessened." *Husteel*, 34 F. Supp. 3d at 1362, citing *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378–79 (Fed. Cir. 2009). This Court has held that if the moving party establishes that irreparable harm would occur as a result of liquidation of entries, such party only needs to raise questions that are "serious, substantial, difficult, and doubtful" to satisfy this factor. *See NSK Corp. v. United States*, 31 CIT 1962, 1966 (2007); *Timken Co. v. United States*, 6 CIT 76, 80, 569 F. Supp. 65, 70 (1983); *see also Ugine*, 452 F.3d at 1294–95 (refusing to deny injunction when ultimate outcome on the merits was not "clear-cut").

As demonstrated in its Complaint, in the instant action Plaintiff raises serious and substantial questions of law. The CVD rate calculated by Commerce for GFCL results primarily from Commerce's calculation of alleged subsidies on industrial land used by GFCL and a cross-owned company, Inox Wind Limited ("IWL"). There are two programs involving alleged subsidies on the provision of land whose cumulative impact is a subsidy rate of 26.62 percent *ad valorem*: (1) the provision of land to GFCL by the Gujarat Development Industrial Corporation ("GDIC") and (2) the attribution of subsidies to GFCL for the provision of land to IWL by the State Industrial Development Corporation ("SIDC").

---

[5] An injunction would also protect GFCL against any premature liquidation of entries by CBP that may occur by error, notwithstanding the fact that entries are suspended pending administrative review.

Plaintiff alleges that Commerce made serious legal errors during its investigation. First, Commerce calculated a CVD rate for GFCL for the GIDC's provision of land at less than adequate remuneration without making the necessary findings that the provision of land is a financial contribution by an authority and that it is specific, as required by statute, 19 U.S.C. § 1677(5)(B)(i). *See* Compl. ¶¶ 52 - 55.

Second, for both the GIDC and the SIDC programs Commerce rejected benchmark data provided on the record by GFCL without adequate explanation. The transactions provided by GFCL are Tier 1 benchmarks, in the same geographic area, of the same quality as land transactions used by Commerce in a 2017 CVD investigation of the same company (GFCL), covering the same products (PTFE resin) and the same production facility (GFCL's Dahej plant in India). By summarily rejecting such private party transactions, which were used recently by Commerce, as potential benchmarks, Commerce's decision is arbitrary and capricious. *See* Compl. ¶¶ 61 - 63. No explanation was provided as to why such transactions were deemed useable in the 2017 CVD investigation, but were set aside in this proceeding. "Court of International Trade looks for a reasoned analysis or explanation from Commerce to ensure that the agency has not abused its discretion in departing from prior analysis." *Içdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 498 F. Supp. 3d 1345, 1350 (Ct. Int'l Trade 2021) (citing *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-68 (1962))). In rejecting the land transactions provided on the record by GFCL in favor of a benchmark based solely on an unconfirmed bid for a parcel of land in the center of Ahmedabad, Commerce's selection also fails to meet the Tier 1 benchmark definition under Commerce's regulations at 19 C.F.R. § 351.511(a)(2)(i) and thus is contrary to law. Compl. ¶¶ 56 - 62.

10

Third, for the SIDC program Commerce again relied on the same Ahmedabad bid quote which was averaged with another flawed benchmark - the exorbitant price of a relatively small parcel of land in Mumbai, in a prime area of the metropolis, that Commerce inexplicably deemed to be comparable with the remote industrial land used by IWL.  The land used by IWL is located in another state, in Madhya Pradesh, more than 200 miles away from the metropolitan area of Mumbai.  Commerce's selected benchmark for the SIDC program is unreasonable on its face because it is for land in the city of Mumbai that is not comparable with the land used by IWL, as GFCL has demonstrated with record evidence.  *See* Compl. ¶¶ 45 - 51. Commerce acted arbitrarily when it selected this benchmark over other price data on the record provided by GFCL that meets all of the requirements of Commerce's regulations.

Fourth, Commerce inexplicably did not address any of GFCL's ten arguments in its rebuttal brief that the Ahmedabad benchmark selected by Commerce was flawed. *See* Compl. ¶¶ 41 - 44.  Commerce has a clear legal obligation to address a respondent's arguments in a final determination.  *See* I&D Memo at 20-22, P.R. 248.

Finally, Commerce's determination that subsidies received by IWL should be attributed to GFCL was also an unexplained and unlawful departure from prior practice.  Commerce's determination that the small amount of wind energy that IWL sold to GFCL from its testing of turbine prototypes was "primarily dedicated" to the production of downstream products by GFCL is contrary to law because it is based on an erroneous interpretation of Commerce's regulations at 19 C.F.R. § 351.525(b)(6).  *See* Compl. ¶¶ 64 - 68. Commerce's determination is also unsupported by the record because it omits relevant facts about IWL's activity, such as the fact that IWL's core business is the manufacture of wind turbines not the production of wind energy and that the amount of wind energy supplied by IWL to GFCL represented a very small

11

amount of IWL's sales.  Courts routinely overturn agency action as arbitrary and capricious where the agency "failed to consider an important aspect" of the issue before it.  *See e.g. SKF USA Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011).  As Commerce's determination demonstrates no meaningful consideration of important facts concerning IWL's activities, the decision here to attribute IWL's land subsidy to GFCL is contrary to law and unreasonable in light of the factual record.  *See* Compl. ¶¶ 64 - 68.  The use of the erroneous benchmarks discussed above compounds the impact of the SIDC program on GFCL.  The SIDC program alone accounts for 26.50 percent of the 31.89 percent subsidy rate for GFCL. These are historically high subsidy rates for purported land subsidies in Indian cases.

For the reasons described above, GFCL's Complaint raises serious and substantial questions of law.  Thus, Plaintiff's motion for an injunction satisfies the requirement that Plaintiff is likely to prevail on the merits.

### D. The Balance of Hardships Weighs in Favor of an Injunction

In contrast to the severe and irreparable harm GFCL faces as a result of the high CVD rate, no hardship will result to the Government if this Court were to grant the injunction.  The injunction will only delay the liquidation of the identified entries and CBP will be collecting cash deposits at the rate in the *Final Determination*.  As discussed above, if entries of PTFE resin produced or exported by GFCL are liquidated prematurely, GFCL will effectively lose any meaningful relief.  To the contrary, the Court has held that "{s}uspension of liquidation at most inconveniences the Government."  *SKF USA Inc. v. United States*, 316 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2004).  Indeed, if the Government prevails, it "will, in fact, ultimately collect or refund, with interest, any amounts owed from or due to the plaintiffs at the conclusion of this litigation."  *Id.*  Therefore, the requested relief is appropriate because the potential harm to GFCL

12

outweighs the inconvenience to Defendant.

### E. The Public Interest Favors GFCL

The public has a strong interest in ensuring that government agencies follow their own regulations and practice. *See Am. Signature Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010) (noting that "{t}he public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly" and reversing the lower Court's denial of preliminary relief where the agency had erred in assessing duties). AD/CVD actions are intended to be remedial rather than punitive in nature, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103 (Fed. Cir. 1990), and it is therefore Commerce's duty to determine rates as accurately as possible, *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). It follows that there is a strong public interest in requiring the Government to adhere to the law and its regulations when imposing onerous cash deposit requirements on foreign producers.

### F. Consultation

As required under USCIT R. 7(f), counsel for Plaintiff, Diana Dimitriuc Quaia, contacted counsel for Defendant and counsel for Defendant-Intervenor to consult on this motion. On July 5, 2022, counsel for Defendant United States, Daniel Roland, indicated via email that, without accepting Plaintiff's arguments or characterization of its case, the United States consents to this motion. On June 29, 2022, counsel for Defendant-Intervenor Daikin America Inc., Luke Meisner, indicated via email that Daikin America Inc. does not take any position with respect to Plaintiff's renewed motion for a preliminary injunction and does not intend to submit comments

to the Court on Defendant's draft order.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant its motion to enjoin the liquidation of entries of subject merchandise entered, or withdrawn from warehouse, for consumption into the United States during the period of July 6, 2021 through December 31, 2022, excluding any gap period entries, as indicated in the proposed order accompanying this motion.

Respectfully Submitted,

**/s/ John M. Gurley**
John M. Gurley
Diana Dimitriuc Quaia
Jessica R. DiPietro

ArentFox Schiff LLP
1717 K Street, NW
Washington, DC  20006
Tel: (202) 857-6301

July 5, 2022                                                   *Counsel for Gujarat Fluorochemicals Limited*

AFDOCS/25914961.11

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(b)(1), the undersigned certifies that PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR A STATUTORY INJUNCTION filed on July 5, 2022 complies with the word limitation requirement. The word count for Plaintiff's motion, as computed by ArentFox Schiff LLP's word processing system is 4,113.

**/s/ John M. Gurley**
John M. Gurley

*Counsel for Gujarat Fluorochemicals Limited*

AFDOCS/25914961.11