**Slip Op. 23-151**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **GUJARAT FLUOROCHEMICALS LIMITED,**<br><br>                    Plaintiff,<br><br>     v.<br><br>**UNITED STATES,**<br><br>                    Defendant,<br><br>     and<br><br>**DAIKIN AMERICA, INC.,**<br><br>                    Defendant-Intervenor. | Before:  Timothy C. Stanceu, Judge<br><br>Court No. 22-00120 |

**OPINION**

[Sustaining an agency decision submitted in response to court order]

Dated: October 13, 2023

*John M. Gurley*, ArentFox Schiff LLP, of Washington, D.C., for plaintiff.  With him on the briefs were *Diana Dimitriuc-Quaia* and *Jessica R. DiPietro*.

*Daniel F. Roland*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States.  With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Claudia Burke*, Assistant Director.  Of counsel on the briefs was *Paul K. Keith*, Assistant Chief Counsel, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

*Elizabeth J. Drake*, Schagrin Associates, of Washington, D.C., for defendant-intervenor. With her on the briefs were *Roger B. Schagrin*, *Luke A. Meisner*, and *Justin M. Neuman*.

Stanceu, Judge: Plaintiff brought this action to contest a determination of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in a countervailing duty ("CVD") investigation of imported granular polytetrafluoroethylene ("PTFE") resin from India. In the contested decision (the "Final Determination"), Commerce concluded that plaintiff Gujarat Fluorochemicals Limited ("Gujarat Fluorochemicals" or "GFCL") received countervailable subsidies from ten Indian government programs and assigned Gujarat Fluorochemicals an estimated total countervailable subsidy rate of 31.89%.

Gujarat Fluorochemicals challenged the Department's findings involving two of the ten government programs. Principally, GFCL contested the Department's including in the 31.89% total subsidy rate a rate of 26.50% for what Commerce considered to be a countervailable subsidy stemming from a 30-year lease of land to a GFCL affiliate, Inox Wind Limited ("IWL"), by the State Industrial Development Corporation ("SIDC"). Gujarat Fluorochemicals also contested the inclusion of a subsidy rate of 0.12% for land Gujarat Fluorochemicals obtained from the Gujarat Industrial Development Corporation ("GIDC").

Before the court is the Department's "Remand Redetermination," issued in response to the court's opinion and order in *Gujarat Fluorochemicals Limited v. United*

*States*, 47 CIT __, 617 F. Supp. 3d 1328 (2023) ("*Gujarat I*").  Final Results of Redetermination Pursuant to Court Remand (Feb. 23, 2023), ECF No. 63 ("*Remand Redetermination*").  Commerce, under protest, excluded from GFCL's overall subsidy rate the 26.50% subsidy rate pertaining to the SIDC's lease of land to Inox Wind Limited.  Also in response to the court's order, Commerce reconsidered its inclusion of a subsidy rate pertaining to the GIDC, concluding again that the inclusion of the 0.12% rate was appropriate.  Based on those changes, Commerce determined a new subsidy rate of 5.39% for Gujarat Fluorochemicals and assigned that same rate as the "all others" rate for the investigation.  The court sustains the Remand Redetermination.

## I. BACKGROUND

Background on this case is presented in the court's prior opinion and is briefly summarized and supplemented herein.  *Id.*, 47 CIT at __, 617 F. Supp. 3d at 1330–31.  Commerce published the contested "Final Determination" as *Granular Polytetrafluoroethylene Resin From India: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination*, 87 Fed. Reg. 3,765 (Int'l Trade Admin. Jan. 25, 2022).  Commerce incorporated by reference an explanatory document, the "Final Issues and Decision Memorandum."  *Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty*

*Investigation of Granular Polytetrafluoroethylene Resin from India* (Int'l Trade Admin. Jan. 18, 2022), P.R. 248.[1]

Commerce filed the Remand Redetermination on February 23, 2023. Plaintiff Gujarat Fluorochemicals and defendant-intervenor Daikin America, Inc. ("Daikin") submitted comments on the Remand Redetermination. Comments on Remand Results of Def.-Int. Daikin America Inc. (Mar. 9, 2023), ECF No. 64 ("Def.-Int.'s Comments"); Pl.'s Comments on the Department of Commerce's Remand Redetermination (Mar. 9, 2023), ECF No. 66 ("Pl.'s Comments"). Defendant United States submitted responses to those comments. Def.'s Resp. to Comments on Remand Results (Mar. 16, 2023), ECF No. 67 ("Def.'s Resp.").

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c),[2] pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930 ("Tariff Act"), *as amended*, 19 U.S.C. § 1516a, including an action contesting a final affirmative determination by

---

[1] Documents in the Joint Appendix (Nov. 4, 2022), ECF Nos. 52 (Conf.), 53 (Public) are cited as "P.R. __."

[2] All citations herein to the United States Code are to the 2018 edition. All citations to the Code of Federal Regulations are to the 2022 edition.

Commerce of whether or not a countervailable subsidy is being provided with respect to merchandise subject to a countervailing duty investigation. *See id*. §§ 1516a(a)(2)(B)(i), 1671d(a)(1).

In reviewing an agency determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### B. Daikin's Comments in Response to the Remand Redetermination

In their comment submissions, Daikin and Gujarat Fluorochemicals raised arguments in opposition to aspects of the Remand Redetermination, even though advocating also that the court sustain the Remand Redetermination. Def.-Int.'s Comments 6; Pl.'s Comments 7. Defendant argues that the court should sustain the Remand Redetermination, which it describes as "supported by substantial evidence." Def.'s Resp. 3. The court has considered the objections Daikin and GFCL have raised to the Remand Redetermination and concludes, for the reasons stated herein, that they do not merit reconsideration of the decision the court reached in *Gujarat I*.

In its comments to the Remand Redetermination, defendant-intervenor Daikin raises a new objection to the court's opinion and order in *Gujarat I*, specifically taking

issue with the court's order therein directing Commerce to delete from GFCL's overall rate the 26.50% subsidy rate for the lease of land by the SIDC to Inox Wind Limited. Daikin now argues that:

> Daikin is concerned that the *Remand Opinion* [*Gujarat I*] misapplied the standard of review for antidumping and countervailing duty determinations by directing Commerce to delete the subsidy margin for this program and not allowing Commerce to reconsider or more fully explain its original determination. . . . [B]ecause the Court directed a particular outcome on remand regarding the provision of land by the SIDC and because Commerce refused to consider any comments on this aspect of its redetermination, Daikin is limited in these comments to reiterating its position supporting Commerce's original determination in the underlying investigation and noting its disagreement with the substance and form of the Court's *Remand Opinion* on this issue.

Def.-Int.'s Comments 5–6. Daikin argues that "[t]he Federal Circuit has explained that the statute permits the Court of International Trade to remand an agency decision for further consideration consistent with its decision, but *the statute does not permit the Court of International Trade to 'outright revers[e] a decision by Commerce. . . .'" Id*. at 5 (emphasis added) (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1383 (Fed. Cir. 2008) ("*Ad Hoc Shrimp*") and citing 19 U.S.C. § 1516a(c)(3)). Daikin maintains that the court impermissibly directed Commerce, upon remand, to "outright reverse" the decision the agency reached on the land lease to Inox Wind Limited.

Daikin is not correct in asserting that the court was required to issue another remand order to allow Commerce to "reconsider or more fully explain its original determination." *Id*. As the court explains below, a second remand could not have

produced an outcome as to the lease of land by the SIDC to Inox Wind Limited differing from the one the court ordered. Accordingly, the course of action Daikin advocates would have delayed this litigation, imposed unnecessary burdens on the parties, and been unfair to plaintiff as to the claim on which it prevailed.

Because the decision to impose a countervailing duty for the land lease to Inox Wind Limited resulted entirely from the Department's erroneous interpretation of its own regulation, another remand to the agency could not have produced a different result, i.e., a result in which a countervailable subsidy for the lease of land by the SIDC to IWL would have been legally permissible. Specifically, the court in *Gujarat I* concluded that the regulation involved, 19 C.F.R. § 351.525(b)(6)(iv), which was "part of a comprehensive revision of countervailing duty regulations following enactment of the Uruguay Round Agreements Act," was intended to address "the situation where a subsidy is provided to an input producer whose production is dedicated almost exclusively to the production of a higher value added product—the type of input product that is merely a link in the overall production chain." *Id.*, 47 CIT at __, 617 F. Supp. 3d at 1336 (quoting *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,401 (Int'l Trade Admin. Nov. 25, 1998)). The court noted that the preamble to the 1998 promulgation of the regulation provided "three examples that illustrate the intended meaning of the term 'primarily dedicated to the production of the downstream product,'" which "clarify that the term pertains to the role the input performed, in the

physical sense, in the production of the downstream product rather than whether the input was provided 'primarily' to the producer of that product." *Id*. Thus, the court found that "[e]lectricity used to power an entire production plant," like the electricity provided by Inox Wind Limited to GFCL, "cannot fairly be characterized as 'merely a link in the overall production chain' of the finished products that are made there." *Id*., 47 CIT at __, 617 F. Supp. 3d at 1337 (citation omitted). Electricity "is energy, and, being of universal application, is not remotely describable as an upstream product that is 'primarily dedicated to the production of the downstream product' as is required by § 351.525(b)(6)(iv)." *Id*. Thus, the court concluded, "electricity cannot be shown on this record to be 'primarily dedicated' either to Gujarat Fluorochemicals's PTFE resin or to the production of any other (unidentified) products made at GFCL's facilities, when the term 'primarily dedicated' is given its correct meaning." *Id*., 47 CIT at __, 617 F. Supp. 3d at 1340.

The regulation aside, no authority available to Commerce would have allowed imposition of a countervailing duty for the land lease to Inox Wind Limited. As the court noted, "Commerce did not conduct an upstream subsidy investigation" as defined in Section 771A of the Tariff Act, 19 U.S.C. § 1677-1. *Id*., 47 CIT at __, 617 F. Supp. 3d at 1334. Had Commerce attempted to conduct such an upstream subsidy investigation, it would have had to disregard uncontradicted record evidence that "only approximately 0.07% of the electricity" used by GFCL was "supplied by IWL" and

"went to the production of the merchandise subject to the investigation." *Id.*, 47 CIT at __, 617 F. Supp. 3d at 1334–35 (citing 19 U.S.C. § 1677-1(a)(3) (allowing an upstream subsidy where the input product "has a significant effect on the cost of manufacturing or producing the merchandise.")). The court explained that the "error in the interpretation of § 351.525(b)(6)(iv) led Commerce to the wrong conclusion," *id.*, 47 CIT at __, 617 F. Supp. 3d at 1337, and that the proper interpretation of the regulation, as informed by its history and purpose, rendered "the inclusion of the 26.50% estimated subsidy rate . . . contrary to law," *id.*, 47 CIT at __, 617 F. Supp. 3d at 1341. The court held, accordingly, that the only lawful action that Commerce could take upon remand would be to delete the 26.50% rate from the overall subsidy rate. *Id.*

The court concluded in *Gujarat I*, and reiterates here in response to defendant-intervenor's comments, that the Department's interpretation of the regulation was not owed deference. *See* Def.-Int.'s Comments 5 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Kisor v. Wilkie*, 139 S.Ct. 2400, 2415–2418 (2019)); *see also* Suppl. Br. of Def.-Int. Daikin America Inc. (Jan. 20, 2023), ECF No. 58. Further, the court explained, and restates here, that "[t]he countervailing duty investigation is completed and its outcome reviewed judicially as a final determination on the agency record." *Gujarat I*, 47 CIT at __, 617 F. Supp. 3d at 1341. Having produced a Final Determination that was contrary to law, Commerce was not entitled, in the circumstance presented, to an opportunity to redo its investigation, and no principle of law now requires the court

to provide such an opportunity, contrary to what defendant-intervenor posits. Def.-Int.'s Comments 5 (expressing concern that the court in *Gujarat I* "misapplied the standard of review" by "not allowing Commerce to reconsider or more fully explain its original determination").³ This Court, like any Article III court, must have the ability to decide whether an agency has or has not correctly interpreted its own regulation. Where, as here, a judicial decision on the validity of the agency's legal interpretation is controlling on the issue presented by plaintiff's claim, this Court must have the ability to order the remedy compelled by the court's decision on the legal question presented. *See* 28 U.S.C. § 1585 (granting the Court of International Trade all the powers in law and equity of a district court).

---

³ During oral argument, defendant-intervenor did not dispute that the 26.50% subsidy rate must be deleted from Gujarat Fluorochemicals's overall subsidy rate if the regulation, 19 C.F.R. § 351.525(b)(6)(iv), is determined to be inapplicable to the facts of this case:

> The court: So, in other words, you agree with the plaintiff on at least one thing. If the reg[ulation] doesn't apply, there's no 26.5 [percent]. In fact, there's nothing.
>
> Defendant-Intervenor's counsel: If the regulation does not apply, if the words "downstream product" in fact mean "subject merchandise," then Commerce would have a problem.
>
> The court: You'd agree with me there'd be no countervailing duty?
>
> Defendant-Intervenor's counsel: If it had to be primarily dedicated to "subject merchandise" versus "downstream product."

Oral Argument at 2:21:02.

Daikin's argument is unpersuasive for another reason: a precedent upon which it relies, *Ad Hoc Shrimp*, is not on point. Daikin cites that decision in support of a blanket proposition that 19 U.S.C. § 1516a does not permit the Court of International Trade to "outright reverse a decision by Commerce." Def.-Int.'s Comments 5 (quoting *Ad Hoc Shrimp*, 515 F.3d at 1383). However, the facts, and therefore the holding, of *Ad Hoc Shrimp* are readily distinguished from this case. In *Ad Hoc Shrimp*, plaintiffs-appellants contested a final antidumping duty determination issued by Commerce, which excluded certain products from the scope of the investigation; plaintiffs in that case requested that this Court remand the determination to Commerce with instructions to amend the antidumping duty order to include those excluded products. This Court dismissed the plaintiffs' challenge on the grounds that (i) it lacked the authority to amend the antidumping order itself, and (ii) it lacked jurisdiction to remand the determination back to Commerce, reasoning that because the U.S. International Trade Commission ("ITC") had already made its final injury determination based on the Department's findings (including determinations on scope), a decision plaintiffs did not appeal, such a remand would be futile. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 31 CIT 102, 112–116, 473 F. Supp. 2d 1336, 1345–48 (2007). The Court of Appeals for the Federal Circuit, although affirming on the first ground, reversed on the second ground, concluding that the contested decision should have been remanded to Commerce even though "ITC action will also be necessary before the antidumping

order itself can be amended." *Ad Hoc Shrimp*, 515 F.3d at 1383.  In contrast to the unusual circumstance presented in *Ad Hoc Shrimp*, the land lease to Inox Wind Limited presented a straightforward issue of regulatory interpretation that was controlling on the validity of plaintiff's claim.

Another important consideration is that a second remand unnecessarily would have delayed the proceeding, required additional briefing under USCIT Rule 56.2, and burdened the parties and the court, all for no purpose.  *See* USCIT Rules 1, 56.2.  A second remand would have been particularly burdensome and unfair to the plaintiff, which successfully contested the inclusion of a subsidy rate for the SIDC's lease of land to Inox Wind Limited and is entitled to a remedy that excludes that rate from the overall subsidy rate.  Daikin's argument disregards the court's obligation to order the remedy for which plaintiff has qualified and to apply USCIT Rule 56.2 "to secure the just, speedy, and inexpensive determination" of this action.  USCIT R. 1.

### C. Gujarat Fluorochemicals's Comments in Response to the Remand Redetermination

In its comments on the Remand Redetermination, plaintiff GFCL expressed support for the Remand Redetermination with respect to the removal of the 26.50% subsidy rate.  Pl.'s Comments 4.  However, Gujarat Fluorochemicals objected to the Department's determination concerning the continued inclusion of the 0.12% subsidy rate in GFCL's overall rate, arguing that "Commerce's benefit calculation and benchmark determination for the GIDC's provision of land remain unsupported by the

record evidence and contrary to law." *Id*. at 2.  Nonetheless, GFCL noted that it "has decided not to pursue this argument," *id*., and "will not request a second remand to the agency on the this [sic] issue," *id*. at 7, thereby foregoing its right to appeal this issue further in the interest of obtaining "expeditious corrective action," *id*. at 2.  GFCL thus has waived the very objection it lodges against the Remand Redetermination.

### III.  CONCLUSION

For the foregoing reasons, the court finds Daikin's and Gujarat Fluorochemicals's new arguments unavailing and will enter judgment sustaining the Remand Redetermination.

/s/ Timothy C. Stanceu  
Timothy C. Stanceu  
Judge

Dated: October 13, 2023  
      New York, New York